# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **BONNIE WINEBARGER,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:10cv00006 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE**, | ) | |
| **Commissioner of Social Security,** | ) | By: PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Bonnie Winebarger, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that she was not eligible for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423, 1381 *et seq.* (West 2003 & Supp. 2010). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more

than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Winebarger protectively filed her applications for DIB and SSI on November 13, 2006, alleging disability as of January 31, 2004, due to problems with her back and shoulders, fibromyalgia, numbness in her hands, removal of gallbladder and short-term memory loss. (Record, ("R."), at 89-95, 98, 111, 115, 141.) The claims were denied initially and on reconsideration. (R. at 50-52, 58, 59-63.) Winebarger then requested a hearing before an administrative law judge, ("ALJ"). (R. at 66.) The hearing was held on January 20, 2009, at which Winebarger was represented by counsel. (R. at 5-32.)

By decision dated May 12, 2009, the ALJ denied Winebarger's claims. (R. at 40-49.) The ALJ found that Winebarger met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2008. (R. at 42.) The ALJ also found that Winebarger had not engaged in substantial gainful activity since January 31, 2004, the alleged onset date. (R. at 42.) The ALJ determined that the medical evidence established that Winebarger had severe impairments, namely fibromyalgia, degenerative disc disease of the cervical and lumbar spines, mild thoracic spondylosis, edema and obesity, but he found that Winebarger's impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 42-43.) The ALJ also found that

Winebarger had the residual functional capacity to perform light work[1] that required only occasional climbing, kneeling and crawling. (R. at 43.) Therefore, the ALJ found that Winebarger was able to perform her past relevant work as a waitress and a sewing machine operator. (R. at 48.) Thus, the ALJ found that Winebarger was not under a disability as defined under the Act and was not eligible for benefits. (R. at 49.) *See* 20 C.F.R. §§ 404.1520(f), 416.920(f) (2010).

After the ALJ issued his decision, Winebarger pursued her administrative appeals, (R. at 87), but the Appeals Council denied her request for review. (R. at 1-4.) Winebarger then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2010). The case is before this court on Winebarger's motion for summary judgment filed July 30, 2010, and the Commissioner's motion for summary judgment filed September 29, 2010.

## II. Facts

Winebarger was born in 1958, (R. at 8, 89, 93), which classifies her as a "person closely approaching advanced age" under 20 C.F.R. §§ 404.1563(d), 416.963(d). Winebarger obtained her general equivalency development, ("GED"), diploma and has two years of college education. (R. at 8-9, 120.) She has past relevant work experience as a shock trauma technician for an ambulance service, a sewing machine operator, a material spreader and a waitress. (R. at 9-12.)

---

[1]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, she also can do sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2010).

John Newman, a vocational expert, also was present and testified at Winebarger's hearing. (R. at 28-31.) Newman classified Winebarger's work as an emergency medical technician as heavy[2] and skilled, as a waitress as light and unskilled, as a material spreader as heavy and unskilled and her job as a sewing machine operator as light and semiskilled. (R. at 29.) Newman was asked to consider a hypothetical individual who could perform light work that did not require working around hazards and that did not require crawling or climbing and only occasional bending. (R. at 29.) Newman testified that such an individual could perform Winebarger's past relevant work as a sewing machine operator and waitress. (R. at 29.) Newman was next asked to consider the same individual, but who was limited to only occasional use of her dominant extremity. (R. at 30.) Newman testified that such an individual could not perform Winebarger's past work. (R. at 31.)

In rendering his decision, the ALJ reviewed records from Russell County Public Schools; Walmart Pharmacy; Dan Levesque, D.C., a chiropractor; Dr. Thomas Roatsey, D.O.; Dr. Shirish Shahane, M.D., a state agency physician; Wellmont Bristol Regional Medical Center; Dr. Richard Surrusco, M.D., a state agency physician; and Dr. William Humphries, M.D. Winebarger's attorney submitted medical reports from Southwest Virginia Outpatient Center to the Appeals Council.[3]

---

[2]Heavy work involves lifting objects weighing up to 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, she also can do medium, light and sedentary work. *See* 20 C.F.R. §§ 404.1567(d), 416.967(d) (2010).

[3]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 1-4), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

Winebarger treated with Dr. Roatsey with Stone Mountain Health Services, ("Stone Mountain"), from June 13, 2005, to October 18, 2007. (R. at 218-61, 313-21, 329-433.) When Dr. Roatsey first examined Winebarger, she complained of low back pain and fluid retention. (R. at 261.) Dr. Roatsey diagnosed pitting edema and prescribed Lasix. (R. at 261.) He did not place any limitations on Winebarger's activities. On August 10, 2005, Winebarger also complained of right shoulder and neck pain. (R. at 250.) Dr. Roatsey prescribed Baclofen and ibuprofen. (R. at 250.)

On September 28, 2005, Winebarger saw Dr. Roatsey and complained of crying a lot, nervousness, lack of energy, irritability and a desire to avoid people. (R. at 243.) Dr. Roatsey diagnosed anxiety and depression and prescribed Lexapro. (R. at 244.) Winebarger noted an improvement in her fatigue on October 13, 2005. (R. at 240.) On November 16, 2005, Dr. Roatsey switched Winebarger to Atarax as needed for anxiety. (R. at 236.) On December 6, 2005, Winebarger complained that the Atarax did not calm her down. (R. at 232.) She complained of insomnia and fatigue. (R. at 232.) Dr. Roatsey added a prescription for Restoril, a sleep aid, and referred Winebarger to Crystal Burke, L.C.S.W., for counseling. (R. at 233.)

On May 30, 2006, Winebarger complained of low back and hip pain. (R. at 363.) Dr. Roatsey noted tenderness over Winebarger's sacroiliac joint; reflexes and straight leg raises were normal. (R. at 363.) Dr. Roatsey started Winebarger on some exercises to relieve pressure on the sacral area and prescribed Flexeril. (R. at 363.) On June 29, 2006, Winebarger complained of back pain hurting down her right leg.

(R. at 358.) Dr. Roatsey noted normal reflexes and good strength, muscle tone and range of motion in Winebarger's extremities. (R. at 358.)

On November 29, 2006, Winebarger complained of back pain and arm pain. (R. at 353.) Again, Dr. Roatsey noted normal reflexes and range of motion and good strength and muscle tone in Winebarger's extremities. (R. at 353.) Dr. Roatsey stated, "I feel she is not able to work and I advised her to file for her disability and I do not feel that she can engage in gainful employment at this time." (R. at 353.) Dr. Roatsey did not place any specific restrictions on any of Winebarger's activities. He prescribed Flexeril, Tramedol and meloxicam. (R. at 353-54.)

On April 24, 2007, Dr. Roatsey noted no abnormalities in Winebarger's memory, mood and affect or judgment/insight. (R. at 347.) On October 18, 2007, Winebarger returned for follow-up for fatigue, back pain, hypelipidemia and acid reflux. (R. at 336-37.) Dr. Roatsey diagnosed chronic back pain. (R. at 336.) He stated, "Again, this lady should be considered totally disabled. She is not able to hold down a regular job and support herself. She has difficulty taking care of just everyday activities in her life and would not be a candidate for retraining or another job. She is 100% totally disabled." (R. at 337.) Dr. Roatsey did not place any specific limits on Winebarger's activities.

On April 21, 2008, Winebarger saw Dr. Charles Wilson, M.D., with Stone Mountain. (R. at 332.) Dr. Wilson diagnosed Winebarger with a large ventral hernia. (R. at 332.) On October 9, 2008, Winebarger saw Dr. Renee A. Schlabach, M.D, with

Stone Mountain for chronic edema. (R. at 424-25.)

On October 16, 2006, Dan Levesque, D.C., a chiropractor, examined Winebarger. (R. at 191-200.) Winebarger complained of chronic neck, mid-back, low back, hip and right leg pain, bilateral hand and arm numbness, tingling and weakness, chronic fatigue, insomnia and possible fibromyalgia. (R. at 191-92.) Levesque reported that Winebarger's cervical spine had moderate restrictions in flexion, but no more than mild restriction in range of motion. (R. at 195-96.) Winebarger had several deficits present in her neurological evaluation, orthopedic evaluation, palpation evaluation and trigger point studies. (R. at 195-98.) Levesque indicated that x-rays were performed, which showed significant degenerative problems in the cervical, thoracic and lumbar spines, but he did not include any of the radiological reports with his report. (R. at 198-99.) Levesque opined that Winebarger's prognosis was poor and that she had permanent and progressively accelerating disc damage in her spine. (R. at 199.) He reported that she would be a liability for any workplace because of her physical restrictions and whatever mental restrictions that might exist because of the regular necessity of high-powered pain medication. (R. at 200.)

Levesque opined that Winebarger could not stand or walk for more than 10 to 15 minutes at a time and that she could not sit longer than 20 to 30 minutes at a time. (R. at 199.) He found that Winebarger was limited from doing any fine motor skills and that her grip strength would severely limit her from activities such as grasping, pinching, holding or carrying items weighing more than five pounds. (R. at 199-200.)

On January 24, 2007, Dr. Shirish Shahane, M.D., a state agency physician,

indicated that Winebarger had the residual functional capacity to perform light work. (R. at 266-72.) Dr. Shahane reported that Winebarger could frequently balance, occasionally stoop, kneel, crouch and crawl and never climb. (R. at 268.) No manipulative, visual or communicative limitations were noted. (R. at 268-69.) Dr. Shahane reported that Winebarger should avoid concentrated exposure to working hazards. (R. at 269.)

On March 31, 2007, Winebarger was admitted to Wellmont Bristol Regional Medical Center for a cholecystectomy. (R. at 273-312.)

On July 24, 2007, Dr. Richard Surrusco, M.D., a state agency physician, reported that Winebarger had the residual functional capacity to perform light work. (R. at 322-28.) He indicated that Winebarger could frequently balance, occasionally stoop, kneel, crouch and crawl and never climb. (R. at 324.) No manipulative, visual or communicative limitations were noted. (R. at 324-25.) Dr. Surrusco reported that Winebarger should avoid concentrated exposure to work hazards. (R. at 325.)

On April 7, 2009, Dr. William Humphries, M.D., examined Winebarger at the request of Disability Determination Services. (R. at 434-38.) Winebarger had normal range of motion of her neck, but had mild tenderness to palpation at the bases posteriorly of the cervical spine. (R. at 435.) Her back range of motion was mildly reduced without significant kyphosis or muscle spasm. (R. at 435.) Winebarger had diffuse tenderness to palpation of the paraspinous muscles of the thoracic and lumbar region and proximal gluteal regions. (R. at 435.) She had full range of motion of the upper extremities, and her lower extremity joint range of motion was slightly reduced

in both hips and both knees, but was within normal limits in both ankles. (R. at 436.) Winebarger was able to get on and off the examination table without difficulty. (R. at 436.) She had normal grip strength bilaterally. (R. at 436.) Radial, median and ulnar nerve functions were intact bilaterally. (R. at 436.) Fine manipulations were performed adequately bilaterally. (R. at 436.) Winebarger had normal strength in both lower extremities. (R. at 436.) Dr. Humphries reported that Winebarger's thought and idea content were within normal limits, and her memory was intact. (R. at 437.) Winebarger's affect and grooming were appropriate. (R. at 437.) X-rays of Winebarger's cervical spine showed degenerative disc disease at the C5-C6 and C6-C7 disc spaces. (R. at 445.) X-rays of Winebarger's thoracic spine showed mild thoracic spondylosis. (R. at 446.) X-rays of Winebarger's lumbar spine showed degenerative disc disease at the L5-S1 level. (R. at 447.) Dr. Humphries diagnosed obesity; fibromyalgia, by history with multiple myalgias; chronic cervical, thoracic and lumbar strain, could not rule out degenerative joint disease or degenerative disc disease with peripheral neuropathy of the right lower extremity; recent abdominal hernia and repair and cholecystectomy; and bilateral lower extremity edema of unknown etiology, possibly mild venous insufficiency. (R. at 437.)

Dr. Humphries completed a medical assessment indicating that Winebarger could occasionally lift and carry items weighing up to 20 pounds and frequently lift and carry items weighing up to 10 pounds. (R. at 439.) He reported that Winebarger could sit, stand and/or walk a total of six hours in an eight-hour workday and that she could do so for up to two hours without interruption. (R. at 440.) Dr. Humphries reported that Winebarger could occasionally reach and frequently handle, finger, feel, push and pull. (R. at 441.) He indicated that Winebarger could frequently operate foot

controls. (R. at 441.) Dr. Humphries reported that Winebarger could occasionally climb stairs and ladders and crawl; frequently balance, stoop, kneel and crouch; and never climb ladders and scaffolds. (R. at 442.) He indicated that Winebarger could occasionally work around unprotected heights, moving machinery and vibrations and occasionally operate a motor vehicle. (R. at 443.) He also indicated that Winebarger could frequently work around humidity, dust, odors, fumes and pulmonary irritants, temperature extremes and loud noises. (R. at 443.)

On July 13, 2009, a medical assessment and a mental assessment[4] were completed. (R. at 449-52.) The medical assessment indicates that Winebarger could occasionally lift and carry items weighing up to 12 pounds and frequently lift and carry items weighing less than 10 pounds. (R. at 449-50.) It was indicated that Winebarger could stand and/or walk a total of one hour in an eight-hour workday and that she could do so for up to 15 minutes without interruption. (R. at 449.) It was indicated that Winebarger could sit for up to two hours in an eight-hour workday and that she could do so for up to 30 minutes without interruption. (R. at 449.) It was indicated that Winebarger should never climb, stoop, kneel, balance, crouch and crawl. (R. at 450.) Her abilities to reach, to handle, to push and to pull were deemed impaired. (R. at 450.) It was opined that she should not work around heights, moving machinery, temperature extremes, humidity or vibration. (R. at 450.)

---

[4]According to the cover letter submitting the additional records to the Appeals Council, the assessments are from Southwest Virginia Outpatient Center. (R. at 448.) The signatures are illegible, therefore, the court cannot determine who completed the assessments or what the person's qualifications for doing so are. Also, there is no information regarding whether any examination was performed.

That same day, a mental assessment was completed indicating that Winebarger had a seriously limited, but not precluded, ability to follow work rules, to relate to co-workers, to deal with the public, to use judgment, to interact with supervisors, to understand, remember and carry out simple instructions, to maintain personal appearance, to behave in an emotionally stable manner, to relate predictably in social situations and to demonstrate reliability. (R. at 451-52.) It also was indicated that Winebarger had no useful ability to deal with work stresses, to function independently, to maintain attention and concentration and to understand, remember and carry out complex and detailed instructions. (451-52.) It was reported that Winebarger's physical and mental conditions, along with weight and education, prevented her from working or retraining for work.[5] (R. at 452.)

## III. Analysis

The Commissioner uses a five-step process in evaluating SSI and DIB claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2010).

---

[5]The record does not contain any additional records from Southwest Virginia Outpatient Center.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2010); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated May 12, 2009, the ALJ denied Winebarger's claims. (R. at 40-49.) The ALJ determined that the medical evidence established that Winebarger had severe impairments, namely fibromyalgia, degenerative disc disease of the cervical and lumbar spines, mild thoracic spondylosis, edema and obesity, but he found that Winebarger's impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 42-43.) The ALJ also found that Winebarger had the residual functional capacity to perform light work that required only occasional climbing, kneeling and crawling. (R. at 43.) Therefore, the ALJ found that Winebarger was able to perform her past relevant work as a waitress and a sewing machine operator. (R. at 48.) Thus, the ALJ found that Winebarger was not under a disability as defined under the Act and was not eligible for benefits. (R. at 49.) *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

Winebarger argues that the ALJ's decision is not supported by substantial

evidence. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 7.) In particular, Winebarger argues that the ALJ erred by failing to give controlling weight to her treating physicians, Dr. Roatsey and Levesque. (Plaintiff's Brief at 7-10.) Winebarger also argues that the ALJ failed to find that she suffered from a severe mental impairment. (Plaintiff's Brief at 11-15.) She further argues that the ALJ's determination of her residual functional capacity is not supported by substantial evidence. (Plaintiff's Brief at 15-21.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if he sufficiently explains his rationale and if the record supports his

findings.

Winebarger argues that the ALJ's decision is not supported by substantial evidence. (Plaintiff's Brief at 7.) In particular, Winebarger argues that the ALJ erred by failing to give controlling weight to her treating physicians, Dr. Roatsey and Levesque. (Plaintiff's Brief at 7-10.) The ALJ noted that the issue was not whether Winebarger had pain and symptoms, but whether her pain was so severe as to be disabling. (R. at 48.) The record fails to demonstrate the presence of any pathological clinical signs, significant medical findings or any neurological abnormalities that would establish the existence of a pattern of pain of such severity as to prevent Winebarger from engaging in any work on a sustained basis. (R. at 48.) The record shows that Winebarger maintained good strength and muscle tone in her arms and legs with no motor or sensory deficits noted from June 2005 through October 2008. (R. at 204, 206, 210, 216, 218, 223, 226, 228, 232, 235, 240, 243, 246, 256, 319, 339.)

Winebarger argues that the ALJ erred by failing to give controlling weight to Dr. Roatsey and Levesque. The ALJ noted that he had considered Dr. Roatsey's opinion and found that it was not supported by his treatment notes. (R. at 45.) A treating physician opinion is entitled to controlling weight when it is well-explained by the medical evidence of record, and consistent with any other evidence of record. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). As explained by the ALJ, examinations of Winebarger's neck, back and extremities were relatively normal. (R. at 204-63, 313, 319-20, 332, 336-40, 424-25.) Similarly, the one-time examination by chiropractor Levesque is not entitled to controlling weight because he is not a treating source, and contrary to the longitudinal objective evidence of benign clinical findings,

his opinion is not fully supported by the record. (R. at 46.) The ALJ relied on the medical examination of Dr. Humphries, which is consistent with the longitudinal evidence contained in Dr. Roatsey's treatment notes. (R. at 46.) Dr. Humphries opined that Winebarger could perform a limited range of light work. (R. at 439-44.) In addition, two state agency physicians opined that Winebarger could perform light work. (R. at 266-72, 322-28.) Based on this, I find that substantial evidence exists to support the ALJ's weighing of the medical evidence.

Finally, Winebarger contends that the ALJ did not properly consider her mental condition in determining her residual functional capacity. The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521(a), 416.921(a) (2010). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. *See* 20 C.F.R. §§ 406.1521(b) 416.921(b) (2010). The Fourth Circuit held in *Evans v. Heckler*, that, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)) (emphasis in original).

Winebarger did not allege disability as a result of mental impairments nor did

she acknowledge such in her testimony at her hearing. In September 2005, Winebarger complained of "crying a lot" and was diagnosed with anxiety and depression and was started on Lexapro. (R. at 243-44.) Two weeks later, Winebarger reported that she felt "great" on the medication. (R. at 240.) A month later, she complained that she did not like the way Lexapro made her feel, and her medication was changed to Atarax. (R. at 235-36.) In December 2005, Winebarger admitted that she was having some marital, home and family problems and that Atarax did not calm her. (R. at 232.) Dr. Roatsey referred Winebarger to a licensed clinical social worker for counseling and prescribed a sleep aid. (R. at 233.) By the end of December 2005, Winebarger reported that she was doing better mentally, and Dr. Roatsey reported that Winebarger's depression and anxiety were doing well. (R. at 228.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). In June 2006, Dr. Roatsey noted that Winebarger was still dealing with a lot of personal and family problems, but that she was coping. (R. at 210.) He did not renew a mental diagnosis or prescribe any medication. (R. at 210.) Dr. Humphries's April 2009 mental status evaluation was unremarkable. (R. at 437.) While Winebarger submitted a mental assessment from Southwest Virginia Outpatient Center to the Appeals Council, which indicated that she had a seriously limited, but not precluded, to a no useful ability to perform occupational, performance and personal-social adjustments, there are not additional records in the file to support this assessment. (R. at 451-52.) Furthermore, it cannot be determined who completed the assessment. Based on the above, I find that substantial evidence exists to support the ALJ's finding that Winebarger did not suffer from a severe mental impairment.

For all of these reasons, I find that substantial evidence does exist in the record

to support the ALJ's residual functional capacity finding.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists to support the Commissioner's finding with regard to Winebarger's residual functional capacity;

2. Substantial evidence exists to support the Commissioner's finding that Winebarger does not suffer from a severe mental impairment; and

3. Substantial evidence exists to support the Commissioner's finding that Winebarger was not disabled under the Act and was not entitled to DIB or SSI benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Winebarger's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the final decision of the Commissioner denying benefits.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2006 & Supp. 2010):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: December 27, 2010.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE